UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MATTHEW J.,

      Plaintiff,

 v.

ANDREW M. SAUL,
Commissioner of Social Security,

      Defendant.

CASE NO. C19-0557-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1971.[1] He completed the eleventh grade and has no past work amounting to substantial gainful activity. (AR 40, 58-60.)

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

Plaintiff protectively filed an SSI application in January 2017, alleging disability beginning August 15, 2008. (AR 224.) The application was denied initially and on reconsideration. A previous application had been denied through reconsideration (AR 122-24), but not appealed.

On June 13, 2018, ALJ Eric Basse held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 36-66.) On October 31, 2018, the ALJ issued a decision finding plaintiff not disabled as of his January 27, 2017 application. (AR 15-24.) *See* 20 C.F.R. § 416.335 (SSI is not payable prior to the month following the month of the application).

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on February 14, 2019 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's depression and anxiety severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal a listing.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform

the full range of work at all exertional levels, but with the following non-exertional limitations: limited to simple, routine tasks with short, simple instructions; can have occasional, but only superficial interactions with general public and co-workers; can accept instructions from supervisors; can understand and follow standard work-like procedures and regular work locations on a consistent basis; would not be able to consistently understand and remember instructions more detailed than simple, routine tasks; can maintain concentration, persistence, and pace for up to two hours, followed by a break, and then can go back and repeat through the workday/week within normal tolerances in the competitive labor market; unlikely to maintain more than simple, routine tasks on a consistent basis; might have occasional difficulty adapting to changes, but can adapt to normal, routine changes in a competitive workplace within normal tolerances; can respond appropriately to normal hazards and travel in unfamiliar places using public transportation or other modes of travel; will not be able to set goals independently on a consistent basis, but can understand and follow employer-set goals; and needs a stable and routine work environment. Plaintiff had no past relevant work to consider at step four.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as an industrial cleaner, stores laborer, and cannery worker.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported

by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in weighing medical opinions and his subjective allegations. He requests remand for an award of benefits. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

## Medical Opinions

Plaintiff takes issue with the ALJ's consideration of medical opinion evidence. He notes the existence of multiple medical opinions dated between 2007 and 2015. (*See* AR 386, 392, 400, 404, 408, 420, 433, 455.) He alleges error in the assignment of great weight to the opinions of non-examining State agency psychologists and in the failure to provide clear and convincing reasons for rejecting the opinions of an examining doctor and a treating doctor.

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Because the record in this case contains contradictory medical opinions, the ALJ could reject the opinions of examining and treating doctors with "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

As the Commissioner observes, plaintiff does not specifically assign error in relation to medical opinions dated between 2007 and 2015. Nor would the Court find error in relation to this

ORDER
PAGE - 4

evidence given the January 27, 2017 protective filing date, *see* 20 C.F.R. § 416.912(d) (2015) (Commissioner develops "complete medical history for at least the 12 months preceding the month in which you file your application[.]"), *as amended*, § 416.912(b)(1) (2017), and the ALJ's conclusion the opinions related to a period that had already been adjudicated and was administratively final (AR 15, 22). The Court, for the reasons set forth below, further finds no error in the consideration of medical opinions relating to the time period under adjudication.

A.  <u>State Agency Psychologists</u>

The ALJ gave great weight to the April and June 2017 opinions of non-examining State agency psychologists Drs. Matthew Comrie and John Robinson. (AR 22, 98-100, 112-14.) He described their opinions plaintiff could understand, remember, and carry out simple instructions in two-hour increments and had moderate social limitations, including only superficial interactions with others and the ability to accept instructions from supervisors. The ALJ found the opinions consistent with the minimal treatment notes showing plaintiff had some social and concentration limitations, but indicating he is generally cooperative and logical during evaluations. (AR 22.) He also found their opinions supported by plaintiff's ability to travel to a mental health conference and engage in community services, as well as his desire to travel out of the country.

Plaintiff alleges these opinions were not entitled to any weight because the doctors failed to provide explanations for their conclusions. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) ("The weight afforded a non-examining physician's testimony depends 'on the degree to which [he] provide[s] supporting explanations for [his] opinions.'") (quoted sources omitted). However, both doctors provided narrative explanations for the no more than moderate functional limitations assessed. (*See* AR 98-100, 112-14.) The ALJ did not err in assigning their opinions weight. *See generally Tonapetyan v. Halter*, 242 F.3d 1144, 1148-49 (9th Cir. 2001) ("Although

ORDER
PAGE - 5

the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record.")

B. <u>Melanie Mitchell, Psy.D.</u>

While the record contains several reports from examining psychologist Dr. Melanie Mitchell, only one fell within a year of plaintiff's current application. In that November 16, 2016 evaluation, Dr. Mitchell assessed plaintiff as markedly impaired in relation to detailed instructions, adapting to changes, and asking simple questions or requesting assistance; markedly to severely impaired in maintaining a schedule, attendance, and being punctual; and severely impaired in communicating and performing effectively, maintaining appropriate behavior, completing a normal work day or week, and setting realistic goals and planning independently. (AR 417-18.) Plaintiff would likely benefit from consistent, weekly psychotherapy, but housing and establishing safety and stability were immediately imperative and intervention was otherwise unlikely to be successful. (AR 418.) Dr. Mitchell recommended treatment with medication evaluation and maintenance, psychotherapy, case management, and housing and vocational assistance. She found an SSI referral appropriate for "chronic, severe mental health impairments, very poor prognosis for gainful employment and likely need for long-term resources[,]" and that plaintiff would need a case manager and assistance in applying for SSI "as he will likely not be able to do so on his own (given his history of not leaving his room until he becomes desperate.)" (*Id*.)

The ALJ assigned Dr. Mitchell's opinion little weight. (AR 22.) The ALJ noted Dr. Mitchell rendered her opinion of marked and severe limitations prior to the period at issue and during a time when plaintiff was not receiving any treatment. Also, while plaintiff "exhibited some impaired concentration and memory during the evaluation, he was cooperative, had logical

speech, was estimated to be of average intelligence, was fully oriented, had perception, fund of knowledge, abstract thought, and insight within normal limits, and endorsed an ability to complete his daily activities." (*Id.* (citing AR 417-19).)

The ALJ reasonably discounted the opinion of Dr. Mitchell based on the fact she rendered it at a time when plaintiff was not receiving any treatment. *See Thomas*, 278 F.3d at 957 (ALJ may consider improvement with treatment in discounting physician's opinion). *See also Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (mental symptoms may subside during treatment and "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability.") The ALJ also reasonably found the opinion of Dr. Mitchell at least partially inconsistent with her findings and observations on examination. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (rejecting physician's opinion due to discrepancy or contradiction between opinion and the physician's own notes or observations is "a permissible determination within the ALJ's province."); *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 603 (9th Cir. 1999) (ALJ appropriately considers internal inconsistencies within and between physicians' reports). The ALJ had, consistent with this reasoning, previously outlined other inconsistent findings on examination and found the remaining records to show no significant change in his condition, that he continued to decline medication and received minimal treatment, engaged in activity inconsistent with the alleged degree of his impairment, and the largely situational nature of his limitations. (AR 20-22.) The ALJ, as such, provided the necessary specific and legitimate reasons for the weight assigned to the opinions of Dr. Mitchell.

C. James Hopfenbeck, M.D.

In a June 8, 2018 medical source statement, treating provider Dr. James Hopfenbeck opined plaintiff had problems with his memory and ability to concentrate and complete tasks. (AR 504

(could not "concentrate in any adequate way," distracted by symptoms and paranoid obsessions, and could not retain memories).) These problems would prevent performance of very short and simple and detailed instructions and staying on task for two-hour time periods, with lapses in concentration lasting more than fifteen minutes, but less than an hour. (AR 505.) He would perform activities at an abnormally slow pace, fifty percent slower than others or more, and would be absent more than once a week. (AR 505-06 ("misses appointments, difficulty tracking").) "Due to extensive trauma history, paranoia and PTSD," plaintiff "is suspicious and prone to explosions of verbal anger and aggression[,]" would be unable to work in coordination with or proximity to others, interact appropriately with the public, respond appropriately to supervisor criticism, ask simple questions, or request assistance, and would distract co-workers with behavioral extremes. (AR 506-07 ("Anger, irritability, panic, agoraphobia, isolativeness.")) He would have difficulty adapting to the demands or stress of the workplace and his ability to function would effectively cease if he were required to get to work at a particular time or perform simple, repetitive tasks, full time, five days a week. (AR 507.) He would be unable to reliably perform basic work tasks even in a very simple job, "trusts no one", is prong to suicidal preoccupation when his stress level is extreme, re-experiences extensive past traumas in flashbacks and intrusive ruminations, constantly fears his abusive ex-stepfather "who he watched beat his 2 sisters to death" will find him and try to kill him, and is always hypervigilant. (AR 508.) These limitations had been present since Dr. Hopfenbeck began treatment on March 28, 2017. (AR 504, 508.)

The ALJ gave little weight to this opinion. "While Dr. Hopfenbeck alleges drastic impairment, this is not consistent with the minimal treatment notes showing largely normal mental status observations and indicating the claimant has been able to travel out of town for a conference, volunteer with a church group, and has expressed a desire to earn his GED and return to Korea."

ORDER
PAGE - 8

(AR 22.) Although Dr. Hopfenbeck opines plaintiff's history of missing appointments is evidence of his inability to sustain work, "the records do not support this, as the claimant is able to care for himself and engage in the activities he enjoys." (*Id*.) Plaintiff has "also opted against taking medication despite reported improvement in the past due to the fact that he believes his symptoms are manageable with case management alone." (*Id*.)

Plaintiff notes he had been kicked off a state cash assistance program on numerous occasions because he did not attend appointments or evaluations as required. (*See* AR 400, 415, 420.) He argues the reasonable inference drawn is that he attended appointments when his symptoms allowed. He maintains, while aware of activities and other observations made by the ALJ, Dr. Hopfenbeck properly based his opinion on his own observations and discussions with others. He contends the ALJ improperly substituted his own opinion for those of a physician. *See*, *e.g.*, *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (". . . ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). Plaintiff denies the activities identified reflect his ability to work on a regular and continuing basis. He describes them as either one-time events or activities he could perform whenever he felt he could, and therefore denies inconsistency with the opinion of Dr. Hopfenbeck. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("Many home activities are not easily transferable to . . . the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."). He also denies his ability to care for himself undermines the opinion, noting minimal evidence of his appearance given infrequent treatment and evidence he did not always maintain his apartment to appropriate standards (*see* AR 247, 249).

Plaintiff additionally takes issue with the ALJ's consideration of evidence he desired to earn a GED and return to Korea. He contends the fact he began to take classes for his GED in

ORDER
PAGE - 9

2009, but had not completed the single remaining class as of the June 2018 hearing, supports, rather than undermines, the opinion of Dr. Hopfenbeck. *See Revels v. Berryhill*, 874 F.3d 648 (9th Cir. 2017) ("we 'must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence.'") (quoted sources omitted). Noting his traumatic history following his removal from Korea as a child and the fact he has no connections there and does not speak the language, plaintiff asserts his desire to return is not realistic and does not suggest he could function any better than opined by Dr. Hopfenbeck.

The Court agrees plaintiff's mere expression of his desire to return to Korea and to complete his GED do not persuasively undermine Dr. Hopfenbeck's medical opinion. However, as discussed below, the ALJ properly relied upon other evidence and provided several specific and legitimate reasons for assigning little weight to this opinion. The Court therefore finds reliance on these factors harmless error at most. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'"; the court looks to "the record as a whole to determine whether the error alters the outcome of the case."); *Carmickle v. Commissioner, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (where ALJ provides specific reasons supporting an assessment and substantial evidence supports the conclusion, an error in the assessment may be deemed harmless).

An ALJ may reject a doctor's opinion upon finding it inconsistent with the medical and other evidence of record, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008), and inconsistent with evidence of a claimant's level of activity, *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). An ALJ also properly considers evidence associated with treatment, *see generally Thomas*, 278 F.3d at 957, such as the receipt of minimal treatment and the failure to

engage in treatment that had improved symptoms in the past.

The ALJ is responsible for assessing the evidence and resolving any conflicts or ambiguities in the record. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014); *Carmickle*, 533 F.3d at 1164. When evidence reasonably supports either confirming or reversing the ALJ's decision, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan*, 169 F.3d at 599. Plaintiff here offers a different interpretation of the evidence. Because the ALJ's interpretation is rational and supported by substantial evidence, it will not be disturbed.

<u>Symptom Testimony</u>

The rejection of a claimant's symptom testimony[2] requires the provision of specific, clear, and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms not entirely consistent with the medical and other evidence in the record. Treatment notes from March 2017 showed plaintiff endorsed mental health problems since he was a teenager and only complained of a recent exacerbation in light of extreme situational stress due to the threat of being evicted from his apartment. (AR 20, 444.) He was not taking any medication or engaged in any treatment. (AR 20-21, 445.) He was poorly groomed, but cooperative, with coherent and logical thoughts and fair insight and judgment. (AR 21, 445.) Notes from the

---

[2] Effective March 28, 2016, the Social Security Administration eliminated the term "credibility" from its policy and clarified evaluation of symptoms is not an examination of character. Social Security Ruling 16-3p. The Court continues to cite to relevant case law utilizing the term credibility.

ORDER
PAGE - 11

following month showed he was doing well and primarily concerned with situational concerns surrounding housing. (AR 446.) In May 2017, he reported improvement in the past with medication, but expressed reluctance about resuming medication. (AR 447.)

Case management records from June 2017 show plaintiff alleged he was unable to work due to his impairments, but was not interested in medication. (AR 467.) On examination, he was fairly clean, cooperative, and logical. Despite alleging difficulty leaving his home due to his impairments, records from August 2017 show he attended a mental health conference in Vancouver, Washington, and travelled there by train. (AR 469.) He had a girlfriend and they planned to attend another conference the following month. Records throughout the remainder of 2017 show no significant change and that he continued to decline medication.

In February 2018, plaintiff met with his case manager and reported his primary concern was "'working on SSI.'" (AR 21, 475.) Though he testified to extreme difficulty leaving his home, he reported he wanted to get SSI so he could get a passport and move back to Korea. He felt isolated in this country due to not getting along with his family and cited this as the reason he kept to himself. He nonetheless volunteered with a local church group that handed out food in the area and had a friend from church. Records indicated his knowledge of current events. The following month, plaintiff expressed interest in earning his GED, but noted the management at his housing would not allow him to go to school or work without increasing his rent. (AR 477.) There are no noteworthy treatment records after this time.

The ALJ acknowledged some evidence of missed appointments, but an absence of evidence this was due to mental health impairments. (AR 21.) Plaintiff testified he did not leave his house due to his impairments, while he elsewhere attributed this to not being close to family and the record indicated "he is able to go out when he wants to such as to volunteer with his church and

attend a conference." (*Id.*) Plaintiff expressed a general lack of interest in treatment since the period at issue, such as by repeatedly declining medication he acknowledges was helpful in the past and his hope to resolve his symptoms with case management alone. The ALJ found it noteworthy plaintiff wanted to get SSI so that he could afford to return to Korea. He found the evidence to suggest plaintiff's limitations are largely situational and not due primarily to mental health impairment.

The ALJ concluded the longitudinal history failed to support a finding of disability. The records are "extremely minimal" and show that, while plaintiff alleged longstanding mental health impairment, "he has sought little treatment during the period at issue other than case management services." (AR 21-22.) In treatment, he complained primarily about situational stressors related to finances and housing and was generally observed to be cooperative, with adequate attention and logical thoughts. (AR 22.) Despite the allegation of being homebound due to anxiety, he travelled to a conference out of town, had a girlfriend, volunteers, and expresses a desire to return to Korea. While the longitudinal record supported the need for some limitations, the ALJ found the RFC to fully accommodate for those limitations.

The ALJ provided a number of specific, clear, and convincing reasons for not accepting plaintiff's testimony as to the degree of his impairment. Those reasons include inconsistency with the medical evidence of record, *Carmickle*, 533 F.3d at 1161; *Tonapetyan*, 242 F.3d at 1148; evidence of minimal treatment, *see Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); unexplained or inadequately explained failure to follow recommended treatment and evidence of prior favorable response to that conservative treatment, *Tommasetti*, 533 F.3d at 1039-40; evidence of a situational component, *Chesler v. Colvin*, No. 13-36098, 2016 U.S. App. LEXIS 8836 at *2 (9th Cir. May 13, 2016); inconsistency with activities, *Bray v. Comm'r of SSA*, 554 F.3d 1219,

1227 (9th Cir. 2009); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); and inconsistencies in reporting, *see generally Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).

Plaintiff's arguments do not undermine the substantial evidence support for the ALJ's conclusion. For example, contrary to plaintiff's contention, the ALJ's findings were sufficiently specific and the path of his reasoning was clear. *Cf. Brown-Hunter v. Colvin,* 806 F.3d 487, 493-94 (9th Cir. 2015) (finding legal error where ALJ failed to identify the testimony found not credible or to link testimony to the parts of record supporting the non-credibility determination, and instead stated "only that she found, based on unspecified claimant testimony and a summary of medical evidence, that 'the functional limitations from the claimant's impairments were less serious than she has alleged'") The ALJ reasonably considered the record as a whole, provided a different but rational interpretation of the evidence, and properly considered all relevant factors, including, *inter alia*, the extremely limited treatment received (*see* AR 444-54 (treatment between February 28, 2017 and March 28, 2017) and AR 465-78 (treatment between May 9, 2017 and April 25, 2018)), that plaintiff repeatedly declined to take medication despite evidence of prior improvement with that treatment, and evidence he engaged in a level of activity inconsistent with the alleged degree of impairment.

**CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this 2nd day of December, 2019.

Mary Alice Theiler
United States Magistrate Judge